**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**RICCY MABEL ENRIQUEZ-PERDOMO**                                                   **PLAINTIFF**

vs.                                           **CIVIL ACTION NO. 3:18-CV-549-CRS**

**RICARDO A. NEWMAN, et al.,**                                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion to dismiss/motion for summary judgment by Defendants, DN 20, and motion pursuant to FRCP 56(d) by Plaintiff, DN 31. For the following reasons, Defendants' motion will be stayed pending discovery on the limited issue of subject matter jurisdiction. Plaintiff's 56(d) motion will be granted in accordance with the guidelines set forth below.

**I. Background**

    **A. Undisputed facts**

Riccy Mabel Enriquez-Perdomo ("Plaintiff") is a Honduran national. DN 1, p. 2. On August 17, 2017, Plaintiff visited the Louisville office of the Immigration and Customs Enforcement ("ICE") Agency to provide bond money and secure pre-trial release of a detained individual. DN 1, p. 3. At the time of her visit, Plaintiff's Deferred Action for Childhood Arrivals ("DACA") status was current with the U.S. Citizenship and Immigration Services ("USCIS"). DN 20, p. 3. After providing biographical information, DN 20-3, p. 1, Plaintiff was detained by ICE staff and transported to at least one other location to be processed for removal from the United States, DN 20-1, p. 3. Plaintiff was released from custody on or about August 24, 2017 in Boone County, Kentucky. DN 1, p. 5.

Plaintiff initiated this action against four ICE agents—Ricardo A. Newman, Joseph M. Phelps, John R. Korkin, and Shawn Byers ("Defendants")—seeking damages under *Bivens* for alleged constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff and Defendants dispute the facts that led up to Plaintiff's detention.

### B. Disputed facts

In her complaint, Plaintiff alleges Defendants "actually checked the Agency's database and confirmed that Plaintiff had properly registered and been approved for DACA status by the U.S. Citizenship and Immigration Services and that her DACA status was current." DN 1, p. 4. Plaintiff claims that "Despite their knowledge of Plaintiff's lawful status Defendants … arrested and detained Plaintiff anyway." *Id*. Plaintiff further alleges that "Defendants had no factual basis to believe that Plaintiff was not lawfully in the U.S. nor did they have any other factual basis to believe that [she] was subject to lawful arrest." *Id*. Finally, Plaintiff asserts she was "never informed of the reason for her arrest and detention, nor was she informed of the reasons for the multiple moves." *Id*. at 5.

Defendants paint a very different picture. Defendant Ricardo Newman alleges he personally reviewed Ms. Enriquez's immigration status in the Computer-Linked Application Information Management System ("CLAIMS"), the Person Centric Query Service ("PCQS") and the Enforce Remove Module. Newman claims this review "confirmed that Ms. Enriquez-Perdomo was subject to an existing removal order from 2004 and that her [DACA] expired in March 2017." DN 20-4, p. 1–2. After his "independent review," Newman alleges he "asked [Defendant] John Korkin to check additional databases to determine whether [Plaintiff] had current DACA." *Id*. Korkin alleges he "searched all of the USCIS databases that [he] believed

would contain information about Ms. Enriquez-Perdomo's DACA status," including CLAIMS, PCQS, Enterprise Document Management System, and the Central Index System. DN 20-5, p. 1. According to Korkin, "None of the databases [he] searched revealed that Ms. Enriquez-Perdomo had current DACA status." *Id*. After Korkin "could not confirm Ms. Enriquez-Perdomo's claim that her DACA was current," Newman alleges he "processed Ms. Enriquez-Perdomo and notified her that she was being charged under 8 U.S.C. § 1182."[1] DN 20-4, p. 2.

After Ms. Enriquez was transported from the Louisville ICE office, Newman says, "it was discovered that USCIS had begun inputting DACA information into the Electronic Immigration System (ELIS)," and the databases that he and Korkin had checked "no longer had the most up-to-date information." *Id*. Defendants claim "Ms. Enriquez-Perdomo was promptly released after her DACA status was confirmed in ELIS." *Id*.

### C. Subject matter jurisdiction

Defendants challenge the factual existence of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). DN 20-1, p. 4.

## II. Legal standard

Courts must resolve questions of subject matter jurisdiction before ruling on the merits of the claim. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) (citing *Gross v. Hougland,* 712 F.2d 1034, 1036 (6th Cir.1983)). "Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case," such as subject matter jurisdiction, are decided. *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

---

[1] 8 U.S.C. § 1182 is the section of the Immigration and Nationality Act that defines and governs immigration officers' dealings with inadmissible aliens.

The plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). When a defendant challenges the court's subject matter jurisdiction, a plaintiff must be afforded "an opportunity to secure and present relevant evidence to the existence of jurisdiction." *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2005) (citing *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988)). However, any discovery sought must be "relevan[t] to the dispositive legal issues in question." *Hahn*, 190 F.3d at 719-20. If the information sought would not save the claim from dismissal for lack of subject matter jurisdiction, substantial prejudice would not result from the district court's limitation on discovery. *Id.*

The Immigration and Nationality Act ("INA") limits federal courts' subject matter jurisdiction. 8 U.S.C. § 1252. Section 1252(g) states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[2] to commence proceedings, adjudicate cases, or execute removal orders against any alien." In *Reno v. Am.-Arab Anti-Discrimination Comm.*, the Supreme Court clarified that Section 1252(g), "applies to three discrete actions that the Attorney General may take: [a] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" (Emphasis in original). *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Supreme Court also stated that the "provision seems designed to give some measure of protection to such discretionary determinations, providing that if they are reviewable at all,

---

[2] Following the passage of the INA, Congress transferred some of the immigration-related functions of the Attorney General to the Department of Homeland Security. Subsequently, the Sixth Circuit held that "the statutory reference to the 'Attorney General' in § 1252(g) now means 'Secretary of DHS.'" *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010).

4

they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process designed by Congress." *Id*. at 472.

## III.  Discussion

Before the Court can determine whether it possesses subject matter jurisdiction, it must first have sufficient information to determine whether Plaintiff's claims "aris[e] from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."  8 U.S.C. § 1252(g).  Defendants assert "Plaintiff was detained because she was subject to a final order of removal," none of the databases Defendants checked on August 17, 2017 verified Plaintiff's claim of active DACA status, and "ICE was therefore obligated to detain Plaintiff so she could be timely removed."  DN 20-1, p. 2–3.  Accordingly, Defendants conclude that "Section 1252(g) deprives the Court of jurisdiction because Plaintiff's claims all arise from the execution of a removal order."  *Id*. at 4.  In support of their claim, Defendants provide a copy of the alleged removal order, DN 20-6, p. 1–4, and affidavits from two Defendants explaining the actions they took on August 17, 2017.  DN 20-4, p. 1–2; DN 20-5, p. 1–2.

Plaintiff disputes fervently Defendants' version of events that gave rise to her detention.  Plaintiff alleges "the Agency's database … confirmed … her DACA status was current."  DN 1, p. 4.  Plaintiff also claims "Defendants had no factual basis to believe that Plaintiff was not lawfully in the U.S. nor did they have any other factual basis to believe that [she] was subject to lawful arrest."  DN 1, p. 4.  Furthermore, Plaintiff does not concede the existence of the alleged active removal order produced by Defendants, and she asserts her right to authenticate the document.  DN 31, p. 3.

5

In short, the information Defendants actually relied upon prior to detaining Plaintiff is dispositive of whether this Court possesses subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (a "facial attack") or the factual existence of subject matter jurisdiction (a "factual attack"). *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In a factual challenge, like the one presented here, the Court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*.

Having reviewed the pleadings and the additional evidence presented by all parties, the Court determines that limited discovery is warranted to decide the preliminary question of subject matter jurisdiction. *See Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2005) ("When a defendant challenges a court's actual subject matter jurisdiction, as opposed to the sufficiency of the allegations of subject matter jurisdiction in the complaint, the parties must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction."). The Court grants jurisdictional discovery to Plaintiff to respond fully to Defendant's motion to dismiss for lack of subject matter jurisdiction based on 8 U.S.C. § 1252(g). Specifically, Defendant is entitled to (1) document discovery to obtain the electronic and other documents that Defendants relied upon in deciding to detain and transport Plaintiff on August 17, 2017; (2) evidence regarding what information Defendants relied upon in deciding to detain and transport Plaintiff on August 17, 2017; and (3) information regarding the authenticity of the warrant of removal/deportation.

The parties are hereby **ORDERED** to adhere to the following schedule:

1. Jurisdictional discovery must be completed on or before November 30, 2019;

2. Plaintiff may supplement her memorandum in opposition to Defendant's motion to dismiss/motion for summary judgment for lack of jurisdiction on or before November 15, 2019; and

3. Defendants may file a reply in support of their motion on or before December 30, 2019.

## IV. Conclusion

Motions having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, DN 20, is **STAYED** pending discovery on the limited issue of subject matter jurisdiction. Plaintiff's 56(d) motion, DN 31, is **GRANTED** in accordance with the limits set forth in this order.

September 26, 2019

Charles R. Simpson III, Senior Judge
United States District Court