UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**RICCY MABEL ENRIQUEZ-PERDOMO**                                                                      **PLAINTIFF**

vs.                                                                      CIVIL ACTION NO. 3:18-CV-549-CRS

**RICARDO A. NEWMAN, et al.**                                                                      **DEFENDANTS**

## MEMORANDUM OPINION

This mater is before the Court on motion to dismiss/motion for summary judgment by Defendants Ricardo A. Newman ("Newman"), Shawn Byers ("Byers"), John R. Korkin ("Korkin"), and Joseph M. Phelps ("Phelps"). DN 20. Plaintiff, Riccy Mabel Enriquez-Perdomo ("Enriquez-Perdomo"), filed a response to Defendants' motion as well as a motion pursuant to Federal Rule of Civil Procedure 56(d) to permit discovery regarding the preliminary question of subject matter jurisdiction. DN 29, 31. Enriquez-Perdomo's Rule 56(d) motion was granted. DN 37. After limited discovery, Enriquez-Perdomo filed a supplemental response. DN 60. The Defendants then filed a supplemental reply in support of their motion to dismiss/motion for summary judgment. DN 61. The matter is now ripe for review.

For the reasons stated herein, the Defendants' motion will be granted.

## I. BACKGROUND

Enriquez-Perdomo is a Honduran national. DN 1 at 2. On August 13, 2004, she was ordered by an immigration judge to be removed to Honduras because the Immigration and Naturalization Service's ("INS") documentary evidence revealed that she entered the United States illegally and failed to appear at her scheduled removal proceedings. DN 61-1 at 6-8. On September 16, 2004, an order of removal/deportation was entered. DN 61-1 at 2.

Approximately nine years later, in March 2013, Enriquez-Perdomo obtained Deferred Action for Childhood Arrivals ("DACA") status. This status allows certain people who came to the United States illegally as children to defer removal proceedings if they satisfy certain guidelines. DN 29-4 at 1. Enriquez-Perdomo renewed here DACA status for a two-year period in March 2015 and January 2017. DN 29 at 3, 29-4 at 1.

On August 17, 2017, Enriquez-Perdomo visited the United States Immigration and Customs Enforcement ("ICE") office in Louisville, Kentucky, to provide bond money and secure pre-trial release of a detained individual. DN 1 at 3. Before posting bond, Enriquez-Perdomo was asked to provide her biographical information. DN 20-1 at 2. Enriquez-Perdomo claims that she was "on a first-name basis with many of the ICE agents and staff" in the Louisville office because she had been to the office numerous times to post bond for detained individuals. She contends that she had been checked by various ICE agents during those visits, and that "those ICE agents were aware that she had the necessary paperwork to be lawfully present in the United States." DN 1 at 3, 29-4 at 2-3. More specifically, she claims that Defendant Ricardo Newman "knew [her] from prior visits, [] had checked her papers in the past, and had validated that she had the necessary paperwork, clearances, had renewed her DACA status in 2015 and that her DACA status was current through January 30, 2019." DN 1 at 3-4, 29-4 at 3. On the other hand, Newman argues that "prior to August 17" he had "no recollection of meeting or interacting with Ms. Enriquez-Perdomo or querying whether she was lawfully in the United States." DN 61-3 at 2.

Nevertheless, Newman entered Enriquez-Perdomo's alien number in the ENFORCE Alien Removal Module ("EARM") database.[1] DN 61-3 at 1. The first screen that Newman reviewed

---

[1] EARM is a computer system owned and maintained by ICE that provides "personal identifiers, photographs, and details of removal case proceedings to aid ICE in carrying out the removal of aliens from the United States." DN 61-2.

2

indicated that Enriquez-Perdomo was the subject of a final order of removal because her "Case Category" was designated as an "8C," her "Processing Disposition" was labeled "Bag and Baggage," there was an "Active Alert" that showed "F.O. of Removal," and the response "Yes" was listed beside the words "Proceed With Removal." DN 61-3 at 1-2, 61-4. Newman also reviewed the "Actions/Decisions" tab within the EARM database, which indicated that Enriquez-Perdomo was "Ordered/Excluded/Deported/Removed." DN 61-3 at 2, 61-5 at 1. Newman does not recall performing any additional searches regarding Enriquez-Perdomo's status. DN 61-3 at 2.

Enriquez-Perdomo was then arrested and taken into custody. DN 20-4 at 2, 29-4 at 2. She was subsequently to various locations en route to Chicago so that travel arrangements for her return to Honduras could be made. DN 1 at 5, 29-4 at 3. Upon learning that Enriquez-Perdomo then had active DACA status, Defendants arranged for her return to Kentucky and release from custody. DN 20-1 at 3.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for the dismissal of actions that lack subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A Rule 12(b)(1) motion raising lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (a "facial attack") or the factual existence of subject matter jurisdiction (a "factual attack"). *Id*. (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a factual challenge, the Court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* A court must resolve questions of subject matter jurisdiction before ruling on

the merits of the claim. *Imhoff Inc., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) (citing *Gross v. Houghland*, 712 F.2d 1034, 1036 (6th Cir. 1983)).

### III. ANALYSIS

#### A. Lack of Subject Matter Jurisdiction

Defendants challenge the existence of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). DN 20-1 at 4. Defendants contend that 8 U.S.C. 1252(g) deprives this Court of subject matter jurisdiction because Enriquez-Perdomo's claims arise from the execution a removal order. DN 20-1 at 4-7, DN 61. On the other hand, Enriquez-Perdomo argues that this Court has jurisdiction to hear her claims because she is not challenging the validity of the 2004 removal order; instead, she contends that her DACA status at the time she was detained deprived the Defendants of the authority to act on the 2004 removal order. DN 29 at 4-9, DN 60.

The Immigration and Nationality Act ("INA") of 1965 established the modern framework for United States immigration law. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which amended the INA "by reforming exclusion and deportation law and procedures, [] improving the verification system for the eligibility of employment . . . and for other purposes." H.R. Rep. No. 104-828, at 1 (1996) (Conf. Rep.) (discussing Illegal Immigration and Immigrant Responsibility Act of 1996). The IIRIRA repealed the old judicial-review scheme and replaced it with § 1252(g), which states, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[2] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

---

[2] Following the passage of the INA, Congress transferred some of the immigration-related functions of the Attorney General to the Department of Homeland Security. Subsequently, the Sixth Circuit held that "the statutory reference to the 'Attorney General' in § 1252(g) now means 'Secretary of DHS.'" *Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010).

4

A few years after enactment, the United States Supreme Court considered how narrowly § 1252(g) should be interpreted. *Remo v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (hereinafter "*AADC*"). In *AADC*, the United States Supreme Court held that § 1252(g)'s jurisdictional striping provision applied "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original). The Court stated that "[t]here was good reason for Congress to focus special attention upon" these three discretionary acts because they "represent the initiation or prosecution of various stages in the deportation process," during which the Attorney General has the discretion to abandon the endeavor, provide deferred action for humanitarian reasons, or convenience. *Id.* at 483-84. "Since no generous act goes unpunished," aliens had started to bring cases challenging the INS's decision not to exercise its discretion to allow aliens to remain in the United States. *Id.* at 484. Therefore, the Court found that § 1252(g) was "designed to give some measure of protection to no deferred action decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

Since *AADC*, U.S. Courts of Appeals have disagreed about the scope of § 1252(g). *See e.g., Garcia v. Attorney General,* 533 F.3d 724, 729 (3d Cir 2009) (§ 1252(g)'s jurisdictional bar did not apply to a noncitizen who challenged their removal as a violation of a stay because the noncitizen was not "challenging the discretionary decision to commence proceedings, but [was] challenging the government's very authority to commence those proceedings"); *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017) (noncitizen's lawsuit, arising from the government's execution of a removal order despite violating a stay of removal, was dismissed under § 1252(g)

5

because the "alien's claims [were] directly connected to the execution of the removal order" and "[t]he statute [ ] makes no distinction between discretionary and nondiscretionary decisions"). The Sixth Circuit "rejected the interpretation that § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says[,] 'no judicial review in deportation cases unless this section provides judicial review.'" *Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1020 (6th Cir. 1999) (quoting *AADC*, 525 U.S. 471, 482). Instead, the Sixth Circuit found that the provision is much narrower, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id*. To justify the narrow interpretation, the Sixth Circuit stated that the "*AADC* Court listed examples of other decisions or actions that occur during the deportation process to which § 1252(g) does not apply," such as "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id*.

Since the Sixth Circuit's initial interpretation, it has consistently applied § 1252(g) carefully to the statutorily enumerated actions that the Attorney General may take. Even applying the jurisdictional stripping provision narrowly, the Sixth Circuit has reached different outcomes based on the factual circumstances presented in each case. *See e.g., Mustata*, 179 F.3d at 1022 (Mustatas' habeas corpus claim for ineffective assistance of counsel did not fall within any of the three Attorney General decisions or actions covered by § 1252(g) because their claim developed "after the allegedly constitutionally deficient performance of their counsel at the deportation hearing," which "resulted in a deportation order being entered against them without due process of law"); *Zhislin v. Reno*, 195 F.3d 810, 813 (6th Cir. 1999) (Zhislin's habeas corpus challenge to the right of the Attorney General to detain him indefinitely when it seemed unlikely that the

deportation order could be executed, was not barred by § 1252(g) because the challenge did not "arise[] from the decision or action by the Attorney General to execute removal orders"); *but see Moussa v. Jenifer*, 389 F.3d 550, 553-54 (6th Cir. 2004) (upholding the district court's decision to dismiss Moussa's petition for a writ of habeas because "the Attorney General's refusal . . . to grant Moussa a stay of deportation . . . is a decision that is wholly within the discretion of the Attorney General," and, as such, was "directly part of a decision to execute a removal order"); *Rranxburgaj v. Wolf*, No. 19-2148, 2020 WL 5033408, at *2-4 (6th Cir. Aug. 26, 2020) (§ 1252(g) barred the district court from hearing Rranxburgaj's challenge to ICE's decision to deny a request for a stay of removal, which would have enjoined the Attorney General from executing a valid order of removal, because ICE agents violated no court ordered stay and Rranxburgaj's claim "goes directly to ICE's decision to execute an order of removal").

Here, Enriquez-Perdomo claims that this Court possesses subject matter jurisdiction because her claims arise, not from a final order of removal, but from the Defendants inability to execute the 2004 order of removal considering her DACA status. DN 60 at 4. She alleges that the Defendants knew that she was lawfully in the United States because Newman "actually checked [ICE's] database and confirmed that [she was] properly registered," she had been "approved for DACA status by [USCIS]," "her DACA status was current," she "met all supervision conditions of that status," and there was no other "factual basis to believe that she was subject to lawful arrest." DN 1 at 3-4, 29-4 at 2-3. Newman contends that "prior to August 17" he had "no recollection of meeting or interacting with Ms. Enriquez-Perdomo or querying whether she was lawfully in the United States." DN 61-3 at 2. Thus, the information that Defendants relied upon prior to detaining Enriquez-Perdomo is dispositive of whether this Court possesses subject matter jurisdiction. If the Defendants relied upon a valid order of removal that was not superseded by a

court ordered stay at the time Enriquez-Perdomo was detained, arrested, and transferred to Chicago, this Court will be deprived of subject matter jurisdiction under § 1252(g).

The cases cited by Enriquez-Perdomo to support the characterization of her claim are unpersuasive. *Polanco v. United States*, No. 10 CV 1705 (SJ) (RLM), 2014 U.S. Dist. Lexis 25502, *5-7 (E.D.N.Y Feb. 27, 2014) did not involve the execution of a removal order and *Escobar v. Gaines,* No. 3-11-0994, 2014 U.S. Dist. LEXIS 123205, *11-12 (M.D. Tenn. Sept. 4, 2014) did not involve allegations that "federal officers who implement the removal provisions of the INA or make discretionary decisions about removal proceedings violated [plaintiff's] constitutional rights." Similarly, the issue in *Medina v. U.S. Dep't of Homeland Sec.*, No. C17-0218RSM, 2017 WL 5176720, *6 (W.D. Wash. Nov. 8, 2017), did not involve the execution of a removal order; rather, the case concerned whether "[d]efendants complied with their own non-discretionary procedures when taking [Medina] into custody and questioning him at the Tukwila facility, which then led to the issuance of an NTA, rescission of his work authorization and, ultimately, termination of his DACA status." Although the court in *Roe v. United States*, No. 18-CV-2644 (VSB), 2019 WL 1227940, at *1-3 (S.D.N.Y. Mar. 15, 2019) found that § 1252(g) did not deprive it of subject matter jurisdiction, it did so, in large part, because the facts demonstrated that the deportation was in violation of a stay of removal granted by an Immigration Judge's order.

The most recent United State Supreme Court case addressing the DACA program also is not applicable. In *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020), the Court considered an action for declaratory and injunctive relief, challenging on constitutional grounds, and under the Administrative Procedure Act, the rescission of DACA program. In addressing, the Government's § 1252(g) jurisdictional argument, the Court held that "[t]he rescission, which revokes a deferred action program with associated benefits, is not a

decision to commence proceedings, much less to adjudicate a case or execute a removal order." *Id.* at 1907 (internal citation and quotation marks omitted).

The facts presented in the case at bar are distinguishable from the cases relied upon by Enriquez-Perdomo. During limited discovery, documents produced revealed that Newman accessed the EARM at 10:48 EDT on August 17, 2017, searched for results using Enriquez-Perdomo's alien number, and reviewed the information EARM provided. DN 61-2 at 2, 61-3 at 1. It is undisputed that Enriquez-Perdomo's profile showed that she was subject to a final order of removal because her "Case Category" was an "8C," her "Processing Distribution" was labeled "Bag and Baggage," there was a "Current/Active Alerts" that showed "F.O of Removal," and the word "Yes" was listed beside the words "Proceed With Removal." DN 61-4. It is also undisputed that the populated table under EARM's tab labeled "Actions/Decisions" provided a description that Enriquez-Perdomo was "Ordered Excluded / Deported / Removed." DN 61-5 at 1. It should be noted that later, the word "No" was listed beside the phrase "Proceed With Removal," but this did not appear in the EARM database until after Enriquez-Perdomo was arrested. DN 61-5 at 2-4.

Based on this information, Newman ordered that Enriquez-Perdomo be detained. DN 61-7 at 2. He then recorded on Form I-213 that "[a]n extensive search of DHS databases revealed ENRIQUEZ [sic] to be the subject of [] a final order B&B," Enriquez-Perdomo "had DACA which expired on 03/19/2017," and that she was "removable in accordance with Section 8 USC 1182." DN 61-7 at 2.

Enriquez-Perdomo disputes neither (1) that she was subject to a valid removal order nor (2) that Newman's review of her file in EARM revealed that she was subject to a valid removal order. But she contends that her claims do not arise from a decision or action to execute a removal order because her DACA status prevented the Defendants from executing an order of removal

9

against her. DN 60 at 3-4. We disagree with her circular reasoning. The 2004 order of removal still existed after Enriquez-Perdomo initially obtained DACA status in 2013, no court had filed an order that stayed her removal, and the Defendants mistakenly executed the valid removal order after reviewing Enriquez-Perdomo's profile in the EARM database that provided numerous indications that she was actively subject to removal. DN 61-1, 61-4. In fact, one of the exhibits offered by Enriquez-Perdomo confirms that her "Case Category" was an "8C." DN 60-3. Although the execution of the removal order should not have been carried out, Enriquez-Perdomo's claims are directly connected to the Defendants' decision to execute a valid removal order against her. Thus, Enriquez-Perdomo fails to demonstrate that her claims do not stem from the enforcement of a valid removal order.

Accordingly, § 1252(g) deprives this Court of subject matter jurisdiction.

## V. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss/motion for summary judgment will be granted by separate order.

November 12, 2020

Charles R. Simpson III, Senior Judge
United States District Court